JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MICHAEL FLEISCHACKER

**(b)** County of Residence of First Listed Plaintiff: Kanabec County, MN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patricia V. Pierce, Esquire and Noah S. Cohen, Esquire
Goldshaw Greenblatt Pierce LLC - Ph. 215-978-9090
Two Penn Center, Suite 1230, Philadelphia, PA 19102

## DEFENDANTS

KEYSTONE REGIONAL VOLLEYBALL ASSOCIATION

County of Residence of First Listed Defendant: ____________
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1332; 28 U.S.C. §§ 2201-2202

Brief description of cause:
Personal Injury, Due Process Violation and Defamation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE: Aug 19, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: 209 Quarter Circle, New Hope, PA 18938

***RELATED CASE IF ANY:*** Case Number:____________________ Judge:______________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☑ 6. Other Personal Injury (*Please specify*): Due Process Violation and Defamation
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Michael Fleischacker, Plaintiff | : | Case No. 2:26-cv-6070 |
| v. | : | JURY TRIAL DEMANDED |
| Keystone Regional Volleyball Association, Defendant | : | |

## COMPLAINT

## I. INTRODUCTION

The facts underlying this Complaint present a cautionary tale of what can happen to athletes, coaches, and volleyball clubs, when their contractually guaranteed due process rights are ignored. Defendant is an organization charged with the duty to timely investigate and determine the facts in response to complaints by or against members. These contractual rights are meant to guard against mere allegations of misconduct being reflexively viewed as credible without careful examination, triggering unwarranted sanctions that are permitted to linger for weeks or even months, damaging volleyball clubs, members and the athletes they serve. Here Defendant abdicated this duty, wreaking havoc on the Plaintiff, and causing downstream negative impacts on the very athletes who are meant to be protected.

Plaintiff Michael Fleischacker is a Director and Head Coach of Peak Elite Volleyball Club ("Peak Elite"). Plaintiff is a member of the Defendant organization, Keystone Regional Volleyball Association ("KRVA"), which is a regional membership organization for youth volleyball clubs. KRVA's relationship and obligations to its members is articulated in the KRVA General Operating Code ("KRVA Code"). KRVA is governed by USA Volleyball ("USAV"), which is part of the

United States Olympic Committee. These organizations are further governed by jurisdictional authority vested in the U.S. Center for Safe Sport ("SafeSport"), which is a 501(c)(3) nonprofit organization created by Congress following passage of the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017.

In November and December 2025, Kimberly Small – who had formerly served alongside Michael Fleischacker and E.D. as a Co-Director for Peak Elite – lodged unfounded allegations of sexual misconduct and retaliation against the Plaintiff Fleischacker and his daughter I.F. and submitted those complaints to KRVA and SafeSport. The complaints against Plaintiff and I.F. were not made in an honest effort to protect Peak Elite's vulnerable minor athletes. They were Ms. Small's attempt at revenge against Plaintiff Fleischacker and E.D. for internal disputes among the Directors of Peak Elite and the consequent ouster of Ms. Small as a Director because of her breach of the fiduciary duty she owed to the club.

KRVA's mishandling of Ms. Small's complaints violated its own Code, as well as SafeSport's Code in multiple ways. On December 19, 2025, and January 28, 2026, SafeSport elected to exercise jurisdiction over Ms. Small's complaints against Plaintiff, Peak Elite, E.D. and I.F. Per KRVA's Code, once SafeSport exercised jurisdiction, KRVA had no further authority over the investigation or handling of the complaints. Pursuant to the SafeSport Code, once it exercised jurisdiction, KRVA was deprived of authority to investigate or resolve those matters. SafeSport Code (2026) at V. B. Although KRVA was still authorized to implement necessary and appropriate measures, it was explicitly prohibited from imposing any suspension once SafeSport took jurisdiction. SafeSport Code (2026) at V.E.2.-3.

Despite that clear directive, KRVA did issue suspensions, suspension-like restrictions, and Individualized Safety Plans ("ISPs") ***after*** SafeSport had exercised jurisdiction over the allegations

against Plaintiff and thereby deprived KRVA of authority to issue the ISP against Plaintiff because it constituted a suspension. KRVA then compounded its error by repeatedly refusing to lift the unauthorized suspensions and refusing to afford Plaintiff the due process protections required by the KRVA Code. This left Plaintiff in an impossible situation where he was encumbered by sanctions that should never have been issued, without any way to appeal the issue and seek relief. The suspension imposed on Plaintiff resulted in barring him from carrying out his duties as Head Coach and Director and disrupting the operations of Peak Elite to such an extent that it was unable to complete the 2026 season and will soon dissolve absent intervention.

Plaintiff further contends that KRVA failed to provide the procedural protections required by KRVA's governing documents before imposing and maintaining the restrictions.

As a result of KRVA's conduct, Plaintiff has suffered substantial economic, operational, professional, reputational harm and emotional distress.

## II. PARTIES AND RELATED INDIVIDUALS AND ENTITIES

1. Plaintiff Michael Fleischacker is an adult resident of the state of Minnesota.

2. Defendant Keystone Regional Volleyball Association ("KRVA") is the regional volleyball association responsible for administering KRVA-related volleyball activities, policies, procedures, disciplinary matters, and member participation within its assigned geographic region.

3. KRVA is a Local Affiliated Organization ("LAO") within the meaning of Section II of the SafeSport Code.

4. USA Volleyball ("USAV") is the National Governing Body ("NGB") for amateur volleyball and is an NGB within the meaning of Section II of the SafeSport Code.

5. The U.S. Center for SafeSport ("SafeSport" or the "Center") is recognized by the United States Congress, the United States Olympic & Paralympic Committee ("USOPC"), and the

National Governing Bodies ("NGBs") as the official safe sport organization for all Olympic, Paralympic, Pan American and Para Pan American sports in the United States. The Code is administered by the Center. The USOPC, NGBs, and Local Affiliated Organizations ("LAOs") must comply, in all respects, with these policies and procedures and are deemed to have incorporated the provisions into their relevant policies as if they had set them out in full therein.

6. The SafeSport Code is administered by the United States Center for SafeSport ("hereinafter SafeSport").

7. Peak Elite was, at all times material to this complaint, a Pennsylvania 501( c) (3) non-profit youth volleyball club that trains and develops girl players ranging from the ages of 15 to 18 years old.

8. Although Peak Elite continues to exist as an entity as a direct consequence of KRVA's issuance of suspensions and failure to afford Plaintiff due process protection, it suspended all operations and missed a July 2026 tryout period for the upcoming season, which has the effect of dissolving the club.

## III. JURISDICTION AND VENUE

9. Plaintiff Michael Fleischacker is an adult individual residing and domiciled in the State of Minnesota.

10. Defendant KRVA is a corporation organized and operating under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1013 Brookside Road, Suite 203, Wescosville, PA 18106.

11. This court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action involves citizens of different state and the amount in controversy exceeds $75,000.

## IV. FACTUAL ALLEGATIONS

12. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully and at length.

13. Peak Elite Volleyball Club is a Pennsylvania nonprofit volleyball club that provides coaching, training, recruiting assistance, and competitive opportunities for junior girl volleyball athletes.

14. Plaintiff Michael Fleischacker is a co-Director of and Head Coach for Peak Elite Volleyball Club.

15. E.D. is a co-founder and Co-Director of Peak Elite.

16. I.F. at times relevant to this Complaint served as an assistant coach for Peak Elite's 16u team.

17. Plaintiff was a registered member of and participated in KRVA and USA Volleyball sanctioned activities.

18. Plaintiff was subject to KRVA's governing documents, disciplinary procedures, and membership obligations.

19. Defendant KRVA administers USA Volleyball activities within its assigned geographic region.

20. Article VIII of the KRVA Operating Code sets forth the contractual due process procedures that apply to all persons registered within KRVA including, but not limited to members, coaches, referee, officials, players and teams with regard to any and all disputes regarding alleged violations of codes or policies created by KRVA and applicable to KRVA members.

**The History of Peak Elite And Its Co-Founders**

21. Peak Elite Volleyball Club was founded four years ago by Club Directors E.D. and Kimberly Small. Plaintiff Michael Fleischacker joined Peak Elite as head coach for the 2024-2025 season and was subsequently promoted to Director of Coaching and Recruiting for the Club in mid-April 2025. This promotion was to the position of full Club Director, and he is responsible for significant administrative and strategic functions.

22. All three of the Directors had close family ties to the Club. E.D.'s daughter had "played up" with Ms. Small's twins for the last four years with Peak Elite while also playing with the twins on their varsity high school team. I.F. is Michael Fleischacker's daughter and in the 2024-2025 season coached the 16u team along with Mr. Fleischacker.

23. The Club Directors first came into serious conflict during a tournament on April 19, 2025, when E.D. informed Ms. Small that her daughter was considering playing with the 17u team for the 2025-2026 season instead of moving up with Ms. Small's daughters to 18u the following year. Ms. Small was furious and immediately notified the 17u team players and their parents that this was happening, as a fact, rather than an option that was being considered.

24. In personal conversations with and to players and parents, Ms. Small cast E.D. and her daughter as "spoilers" who were ruining the 18u team while, at the same time, blaming Mr. Fleischacker for the team not sticking together for the following season.

25. By June 24, 2025, Ms. Small was angling to assume complete control of the 18u team, stating that she did not want her daughters and the rest of the team to share court time with the 17u team, despite knowing that teams sharing space was a common practice for clubs. Ms. Small and her daughters needed to remain with the Club because it allowed her daughters to play for free. If she broke off independently, Small would have had to pay her daughters' share of the

fees or, absent that, the remaining nine families on the 18u team would have to pay more to support her two daughters. This way, the costs of her two daughters were distributed across four teams rather than one.

26. Increasingly, Ms. Small began to isolate the 18u team and its coaches and made additional demands that those players receive more favorable treatment than the other teams.

27. Despite receiving significant financial support as a Club Director, Ms. Small rarely assumed responsibilities for any team other than those on which her daughters played.

28. By October 14, 2025, Kim Small was insisting that she have complete and independent control of the 18u team and its coaches, which ran completely counter to the Club's #ONETEAM culture. That day, Ms. Small sent a text insisting that alternative coaching contracts be prepared for the 18u coaches, threatening that should she be refused "the club is going to blow up."

29. Matters came to a head in November 2025 when, despite reminders, the 18u coaches had failed to obtain all of the required clearances and memberships needed prior to commencement of team practices, including those requirements set forth in Section 2.05 of KRVA's Junior Operating Code requirements for coaches.

30. On November 20th, E.D. and Mr. Fleischacker informed Ms. Small that she was not permitted to proceed with practice until the proper clearances and memberships were obtained.

31. Ms. Small insisted that the practices would move forward and accepted full responsibility. E.D. called Ms. Small and begged her to cancel practice scheduled for that evening. Ms. Small refused and threatened that if E.D. were to cancel practice, she (Small) would report I.F. to the "authorities" and would cancel the Club's practice space at Temple University.

32. That night, E.D. sent an email to the 18u parents addressing the situation. In the email, the parents were advised that the practices were not sanctioned by the Club.

33. The next morning, November 21, 2025, E.D. called Ms. Small and stated that she would not be threatened and that if she had concerns about I.F. that she should report them and that she personally had no concerns and was confident that I.F. would be exonerated.

34. Shortly thereafter, Ms. Small appears to have contacted the Montgomery County Office of Children and Youth, on or about December 4, 2025.

35. Child Line investigators reached a determination that Ms. Small's allegations were unfounded and within two days closed the investigation.

36. Ms. Small then apparently made subsequent and increasingly expansive allegations of misconduct against Plaintiff, his daughter and E.D. to SafeSport, KRVA, USAV, AAU and the Upper Dublin Police Department.

37. The Upper Dublin police investigated and promptly closed the complaints without any findings against Plaintiff.

**<u>KRVA Has Breached its Contractual Obligations Plaintiff</u>**

38. Plaintiff has never been informed of the specifics of the complaints, the identity of the complainants, the identity of witnesses or the evidentiary basis upon which KRVA has taken disciplinary action against him, his daughter and the Peak Elite Club, which actions included a Temporary Suspension of all Club activities, which KRVA euphemistically termed a "Pause" and a suspension of Plaintiff's ability to carry out his duties as Head Coach which KRVA termed a "No Contact" Individualized Safety Plan.

39. On December 19, 2025, KRVA advised Plaintiff's daughter I.F. that she was being placed on "temporary suspension" and could no longer participate in KRVA/USAV sanctioned events.

40. On December 24, 2025, KRVA sent an email to Peak Elite's Co-Directors advising that "due to information submitted to us over the last several days…we are going to pause KRVA/USAV activities for the Peak Elite 17U team until Monday, January 5th, 2026."

41. KRVA imposed those restrictions even though it knew that SafeSport had already exercised jurisdiction in both matters.

42. On January 13, 2026, SafeSport and KRVA lifted those restrictions.

43. KRVA had no authority to impose the "pause," which operated as a suspension because it was implemented after SafeSport had exercised jurisdiction in both matters.

44. SafeSport's Code explicitly forbids an NGB or an LAO, such as KRVA, from imposing a suspension after SafeSport has taken jurisdiction. Specifically, Section V.E.2 of the SafeSport Code for the U.S. Olympic and Paralympic Movement (2026) provides that, once the Center exercises jurisdiction, the relevant organization may implement any necessary safety plans or temporary measures, ***with the exception of a Temporary Suspension.***

45. Likewise, KRVA's own General Operating Code Section 8.08(3)(b) states:

> "The USCSS (SafeSport) shall have jurisdiction and authority to investigate allegations or reports of sexual abuse or misconduct and of any allegations of violations of USA Volleyball's SafeSport Policies that are reasonably related to and accompany a report of allegations of sexual abuse or misconduct ***… KRVA shall not engage in its own investigation or disciplinary process related to any allegations or reports that are within the jurisdiction of USCSS. However, KRVA may issue Summary Suspension, which shall be effective until such time as USCC has exercised jurisdiction … ."***

46. NGBs and LAOs are prohibited from interfering with SafeSport investigations pursuant to 36 U.S.C. § 220541(f)(4).

47. On February 5, 2026, Defendant KRVA emailed unsigned documents titled "Individualized Safety Plan" ("ISP") to Plaintiff, I.F. and E.D.

48. Peak Elite Volleyball Club teams consist of minors aged 15 to 17 and one team of 18-year-olds. Plaintiff Fleischacker did not and does not coach 18-year-olds. This season, he has only coached the 16 and 17-year-old teams. See Peak Elite Coaches, https://www.peakelitevb.org/ourcoaches.

49. The ISPs prohibited Plaintiff from contacting his Co-Director, his own daughter who resided with him, and from having any contact with "minors" and stated that it governed Plaintiff' conduct in all USA Volleyball and KRVA volleyball-related activities.

50. In purpose and effect, the ISP issued to Plaintiff Michael Fleischacker prevented him from performing his duties as Co-Director and Head Coach of Peak Elite because those duties required interaction with his Co-Director, his daughter, who was a coach, the athletes who are "minors" and participation in KRVA-related volleyball activities.

51. Plaintiff, I.F. and E.D. repeatedly requested the information about the allegations and the process necessary to respond to the ISPs, including the substance of the allegations, the identity of any complainant, and the identity of the entity responsible for issuing, modifying, or lifting the restrictions, but were met alternately with silence or round robin finger pointing with each organization (SafeSport, KRVA and USAV) disclaiming responsibility while pinning it on another organization.

52. On February 18, 2026, prior counsel for Plaintiff sent an email to KRVA, USAV and SafeSport on behalf of Peak Elite, Plaintiff, I.F. and E.D. regarding the ISPs that had been issued against them stating:

> "We have now conferred with all three of your organizations regarding the attached Individual Safety Plans that were sent to [E.D.], Mike Fleischacker, and [I.F.]. Based on

our discussions and emails, we now understand that KRVA, USAV and the U.S. Center for SafeSport ... are all disclaiming responsibility for issuing and enforcing these plans. We also note that the Safety Plans are not signed by a representative for KRVA, USAV or the Center. Based on the failure of your organizations to claim responsibility for the Safety Plans, and seeing that there does not appear to be any Safety Plans actually in place, please be advised that [E.D.], Mr. Fleischacker and I.F. intend to resume their regular activities and involvement in the Peak Elite Volleyball Club unless we hear something to the contrary from one of your organizations by 5:30 p.m. eastern time on February 19, 2026."

53. The next day, KRVA Attorney John H. Kiefel responded with the following email:

Andrew: Please be advised that KRVA disagrees with the conclusions you have set forth within your Email.
The sole statement of fact, which is correct, is that the Safety Plans are "not signed by a representative for KRVA, USAV or the Center."
Please note that any reported and confirmed violation of the Safety Plans will be promptly reported by KRVA to the U.S. Center for SafeSport, and USAV.
In addition, KRVA will take the appropriate action as to any reported and confirmed violation of any of the Safety Plans.

Please be guided accordingly.

John

54. On March 25, 2026, SafeSport identified Defendant KRVA as the appropriate entity and directed Defendant KRVA to provide Plaintiff with the due process protections required by KRVA's established policies and procedures. A true and correct copy of that correspondence is attached hereto as Exhibit A.

55. As member of KRVA, Plaintiff was entitled to due process procedures set forth in the KRVA Code at Section 8.03-8.06 which provisions stipulate that Plaintiff was entitled to receive a "Decision Letter" prepared by KRVA "summarizing the allegation precipitating the matter, the relevant policies and code sections, the evidence considered, the decision reached, and, if a sanction is imposed, the process for appeal. Decisions shall be made as soon as possible after

a matter is opened and a notification letter to an accused party shall be prepared and transmitted … promptly thereafter." KRVA Code Section 8.03.

56. KRVA issued a "Decision Letter" on April 3, 2026, that did not comply with Section 8.03 of its Code. No summary of the allegations, evidence considered or decision reached was provided; rather, the entire Decision Letter constituted nothing more than KRVA counsel's legal opinion and conclusion that SafeSport erred in assigning responsibly to KRVA. A true and correct copy of the Decision Letter is attached as Exhibit B.

57. Thereafter, Plaintiff Michael Fleischacker triggered KRVA's appeal procedures permitting review of KRVA's imposition of the ISP by a neutral arbitrator selected pursuant to American Arbitration Association rules and procedures.

58. In response, KRVA failed and refused to participate in the arbitration causing AAA to close the case administratively and strike KRVA from hereafter participating in AAA matters. A true and correct copy of the letter administratively closing the matter is attached hereto as Exhibit C.

**COUNT I**
**BREACH OF CONTRACT AND MEMBERSHIP OBLIGATIONS**

59. Plaintiff Michael Fleischacker incorporates the preceding paragraphs.

60. KRVA owed contractual and membership obligations to Michael Fleischacker as articulated in the KRVA Code.

61. Plaintiff contends that KRVA breached those obligations by the conduct described herein.

62. Michael Fleischacker suffered damages as a result.

WHEREFORE, Plaintiff Michael Fleischacker respectfully requests that this Court enter judgment in his favor and against Defendant Keystone Regional Volleyball Association, award compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT II**
**COMMON-LAW DUE PROCESS**

63. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

64. Defendant KRVA exercises disciplinary authority over coaches, clubs, and members participating in Olympic-affiliated amateur athletics.

65. By exercising disciplinary authority over coaches, clubs, and members participating in Olympic-affiliated amateur athletics, Defendant performs a quasi-public function and exercises significant authority in an area of public concern. As such, Defendant owed Plaintiff a common-law duty to employ fundamentally fair procedures before imposing disciplinary sanctions.

66. Defendant owed Plaintiff an independent common-law duty to provide fundamentally fair procedures, including reasonable notice of the allegations, disclosure sufficient to permit a meaningful response, and a meaningful opportunity to be heard before imposing or maintaining disciplinary restrictions.

67. Defendant's failure to provide Plaintiff with notice of the allegations and a meaningful opportunity to be heard constituted a denial of fundamental fairness and common-law due process.

68. This duty exists independently of the contractual obligations arising under the KRVA Code.

69. Defendant breached its common-law duty by, among other things:

a. imposing suspensions and suspension-like restrictions after SafeSport had exercised jurisdiction;

b. failing to disclose the allegations, evidence, and witnesses supporting the restrictions;

c. failing to provide Plaintiff with a meaningful opportunity to be heard;

d. maintaining restrictions despite lacking authority to do so;

e. refusing to provide the procedural protection required by its own disciplinary framework; and

f. refusing to participate in Plaintiff's appeal before the American Arbitration Association.

70. As a direct and proximate result of Defendant's conduct, Plaintiff suffered economic loss, reputational injury, emotional distress, humiliation, physical manifestation of emotional distress including, without limitation, severe anxiety, inability to sleep, nausea, syncope, depressive episodes requiring treatment with anti-depressant medications, and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, together with all other relief the Court deems just and proper.

**COUNT III**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS**

71. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

72. Plaintiff maintained valid contractual relationships with Peak Elite Volleyball Club pursuant to which he served as Director and Head Coach and was compensated for those services.

73. Defendant knew Plaintiff served as Director and Head Coach for Peak Elite and knew that the restrictions it imposed would prevent Plaintiff from performing those contractual obligations.

74. Defendant intentionally and improperly interfered with those contractual relationships by imposing unauthorized suspensions, Individualized Safety Plans, and other restrictions that prevented Plaintiff from performing his contractual duties.

75. Defendant acted without privilege or justification because it lacked authority to impose or maintain those restrictions after SafeSport assumed jurisdiction and because Defendant failed to afford Plaintiff the procedural protection required by law and its own governing documents.

76. Defendant's conduct caused Plaintiff to be unable to perform his contractual obligations and substantially impaired his contractual relationship with Peak Elite.

77. As a direct and proximate result of Defendant's interference, Plaintiff suffered loss of compensation, loss of contractual benefits, reputational injury, emotional distress, including, without limitation, severe anxiety, inability to sleep, nausea, syncope, depressive episodes requiring treatment with anti-depressant medications and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages where permitted by law, interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV
## DEFAMATION

78. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

79. Defendant published communications concerning Plaintiff, including suspensions, Individualized Safety Plans, disciplinary directives, and related communications to third parties,

including USA Volleyball, Peak Elite Volleyball Club, its directors, coaches, parents, athletes, tournament personnel, and others.

80. Although Defendant did not expressly state that Plaintiff had engaged in sexual misconduct or otherwise posed a danger to minors, Defendant's communications and actions conveyed the false implication that Plaintiff had engaged in conduct rendering him unfit to coach or interact with minor athletes.

81. The natural and intended effect of Defendant's publications was to communicate that Plaintiff posed a risk to children or had engaged in serious misconduct warranting removal from coaching duties.

82. Those implications were false.

83. At the time Defendant published and maintained those communications, Defendant knew, or in reckless disregard of the truth failed to recognize, that SafeSport had assumed jurisdiction, Defendant lacked authority to impose the challenged restrictions, and Plaintiff had not been afforded the procedural protections required before such disciplinary action could properly be imposed.

84. Defendant acted negligently, recklessly, and/or with actual malice in publishing and maintaining those communications despite the absence of any adjudication that Plaintiff had engaged in misconduct.

85. The communications were understood by their recipients to refer to Plaintiff and to convey that Plaintiff had engaged in serious misconduct involving minors.

86. As a direct and proximate result of Defendant's conduct, Plaintiff suffered injury to his personal and professional reputation, humiliation, emotional distress, including, without limitation, severe anxiety, inability to sleep, nausea, syncope, depressive episodes requiring

treatment with anti-depressant medications loss of employment and coaching opportunities, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, including damages for injury to reputation and emotional distress, punitive damages to the extent permitted by law, interest, costs, and such other relief as the Court deems just and proper.

## COUNT V
## DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)

87. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

88. An actual and justiciable controversy exists between Plaintiff and Defendant concerning their respective rights, duties, and obligations under the KRVA General Operating Code and the SafeSport Code.

89. Plaintiff contends that, once SafeSport exercised jurisdiction over the allegations against him, Defendant lacked authority under the SafeSport Code and the KRVA Code to impose or maintain the disciplinary restrictions challenged herein.

90. Plaintiff further contends that Defendant failed to provide the procedural protections required by the KRVA Code and Pennsylvania common law before imposing and maintaining those restrictions.

91. Defendant has denied Plaintiff's interpretation of the parties' respective rights and obligations and has maintained that its actions were authorized and proper.

92. As a result, an actual controversy exists concerning:

a. whether SafeSport's exercise of jurisdiction deprived Defendant of authority to impose the suspensions, Individualized Safety Plans, and other disciplinary restrictions challenged herein;

b. whether Defendant complied with the KRVA Code and SafeSport Code in imposing and maintaining those restrictions;

c. whether Defendant afforded Plaintiff the procedural protections required by the KRVA Code and Pennsylvania common law; and

d. whether Defendant's disciplinary actions were authorized and valid.

93. A judicial declaration of the parties' rights and obligations will terminate the uncertainty and controversy, giving rise to this action and will serve a useful purpose in clarifying the legal relationship between the parties.

**WHEREFORE,** Plaintiff respectfully requests that this Court declare that Defendant lacked authority under the KRVA Code and the SafeSport Code to impose and maintain the disciplinary restrictions challenged herein and award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

DATE: August 19, 2026

By: ______________________

Patricia V. Pierce, Esquire
PA Bar I.D. No. 23129
Noah S. Cohen, Esquire
PA Bar I.D. No. 022732012
GOLDSHAW GREENBLATT PIERCE LLC
Two Penn Center, Suite 1230
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-9789-9090
ppierce@ggplawfirm.com
ncohen@ggplawfirm.com
*Attorneys for Plaintiff*

# EXHIBIT A

| | |
|---|---|
| **From:** | Resolutions |
| **To:** | Pat Pierce; jkiefel@johnhkiefellawoffice.mygbiz.com |
| **Cc:** | Scott B Goldshaw; Michael Fleischacker; Rachel Pogolowitz; Andrew.LaFiura@jacksonlewis.com |
| **Subject:** | Re: Demand For Hearing On Temporary Measures |
| **Date:** | Wednesday, March 25, 2026 6:40:23 PM |
| **Attachments:** | image002.png<br>image003.png<br>INDIVIDUALIZED SAFETY PLAN (Mike Fleischacker).pdf |

Good afternoon, Patricia and John,

After review of the timeline related to the matter involving Michael Fleischacker ("Fleischacker"), conversations with internal staff at the U.S. Center for SafeSport (the "Center"), a staff member of USA Volleyball (USAV), and yourselves individually, I wanted to provide the following information to memorialize the timeline, our conversations, and provide potential next steps.

**Timeline**

On January 29, 2026, at 12:21pm MT, the Center exercised jurisdiction over the allegations involving Fleischacker in case 2026-00302.

On February 5, 2026, at 6:04pm MT, the Keystone Region Volleyball Association (KRVA) Events Manager, Valerie Podczasy, issued the *Individualized Safety Plan* (hereafter "safety plan", attached) via email directly to Fleischacker from Results@krva.org.

On February 6, 2026, at 2:36pm MT, on behalf of Fleischacker, the Center received a request from Andrew La Fiura for a hearing related to the *Individualized Safety Plan*.

At 2:58pm MT on that same day, the Center replied stating "...the Center has neither instructed KRVA to impose a safety plan, nor has the Center imposed any temporary measures... Consequently, the Center is not the appropriate venue to request a hearing."

Since February 6, 2026, the request for a temporary measures hearing has been renewed with KRVA, USAV, and the Center to no avail.

**Relevant Provisions**

Pursuant to Section V.E.2. of the *SafeSport Code for the U.S. Olympic and Paralympic Movement* (2026) ("SafeSport Code"), once the Center exercises jurisdiction, "The relevant organization may implement any necessary safety plan(s), temporary measure(s) (with the exception of a Temporary Suspension), make employment decisions or impose penalties..."

Here, since the safety plan was issued *after* the Center exercised jurisdiction, the temporary measures were *not* "automatically and immediately adopted," as outlined in SafeSport Code § V.E.1. (2026).

Accordingly, under the latter portion of SafeSport Code § V.E.2. (2026), "The USOPC, NGBs, and LAOs are responsible for resolving any complaints, appeals, or challenges made to their above-mentioned decisions pursuant to their policies and procedures and the Ted Stevens Act." The appeal process does not run afoul, so long as the relevant organization refrains from conducting its own investigation and instead relies on: (1) reports and evidence received directly by the relevant organization; (2) publicly available information; and/or (3) the results of a background check screening report.

**Potential Next Steps**

Since KRVA is the issuing body of the safety plan, it is incumbent upon KRVA to resolve the appeal consistent with their established policies and procedures. This email is addressed to counsel for both Fleischacker and KRVA to facilitate that process.

Consistent with Center practice and SafeSport Code § XII.A. (2026), the Center retains the authority to impose temporary measures at any time and evaluates the necessity of such measures on an ongoing basis in light of the information then available.

In the event the Center imposes temporary measures, it will do so in accordance with the procedural due process requirements set forth in SafeSport Code § XI.J. (2026). Specifically, the Center will issue a written notice of allegations to the Respondent and provide a summary to USA Volleyball for dissemination to individuals with a *need to know* to properly enforce and effectuation any imposed measures.

Please contact me at resolutions@safesport.org should you have additional questions.

Thank you,

U.S. CENTER FOR SAFESPORT
CHAMPION RESPECT. END ABUSE.

**Dennis O. Evans**
Assistant Director, Response & Resolution Administration

**Confidentiality Notice:** This email and any attachments contain information that is confidential, privileged, or otherwise protected under federal law, including 36 U.S.C. § 220541. It is intended solely for the use of the authorized recipient. Any unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately and delete all copies of this communication.

**From:** Pat Pierce <ppierce@ggplawfirm.com>
**Date:** Tuesday, March 24, 2026 at 11:12
**To:** Resolutions <resolutions@safesport.org>
**Cc:** Scott B Goldshaw <sgoldshaw@ggplawfirm.com>, Michael Fleischacker <mfleischacker@gmail.com>, Rachel Pogolowitz <rpogolowitz@ggplawfirm.com>
**Subject:** Demand For Hearing On Temporary Measures

**NOTE:** This email originated from outside of the Center. Do not respond, click links or open attachments unless you recognize the sender and know the content is safe.

Michael Fleischacker hereby demands arbitration of the Temporary Measures set forth attached Individualized Safety Plan pursuant to the 2026 SafeSport Code for the U.S. Olympic and Paralympic Movement, (SafeSport Code), Section XII.B. In connection therewith, Respondent Michael Fleischacker demands that he and his counsel be provided with written notice of the allegations against him which gave rise to imposition of the temporary measures as required by SafeSport Code XI.J.1 and 36 USC § 220541(a)(1)(H).

**Patricia V. Pierce** (she/her)
Partner

Phone (215) 978-9090 | Fax: (215) 445-3629
Email: ppierce@ggplawfirm.com
www.ggplawfirm.com

Goldshaw Greenblatt Pierce

Two Penn Center | Suite 1230
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102

35 Kings Highway East | Suite 200
Haddonfield, NJ 08033

This e-mail may contain attorney-client privileged communications or attorney work product. If you are not the intended recipient, please delete this e-mail immediately and notify the sender you have received this e-mail in error.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

# EXHIBIT B

**KEYSTONE REGIONAL VOLLEYBALL ASSOCIATION**

---

**IN RE: MICHAEL FLEISCHACKER**

---

AND NOW, this 3rd day of April 2026, the Keystone Regional Volleyball Association ("KRVA") sets forth the following findings and conclusions as to the Michael Fleischacker matter, pursuant to the KRVA Due Process procedures as set forth at Section VIII. Violations of Codes/Policies and Due Process, at Section 803.

**A. <u>Description of Alleged Dispute</u>**

1. On or about December 19, 2025, the U.S. Center for SafeSport (the "Center") received an initial report alleging that Isabella Fleischacker engaged in Minor Athlete Abuse Protection Policy ("MAAPP") violations and exercised jurisdiction over those allegations.

2. On or about December 19, 2025, KRVA informed Isabella Fleischacker that the Center had exercised jurisdiction over the initial report. The Center's Case Number is 2025-07294.

3. As the initial report was made directly to the Center, **<u>not KRVA</u>**, KRVA is unaware of the details of the exact matters reported to the Center, or the details of the Center's investigation concerning Isabella Fleischacker.

4. Michael Fleischacker is Isabella Fleischacker's father.

5. Michael Fleischacker and Isabella Fleischacker are both coaches for the Peak Elite Volleyball Club's 17U team.

6. On or about December 23, 2025, KRVA received information from Confidential Informant(s) (hereinafter "CI," if singular, or "CI(s)," if plural) that are believed to be cooperating with the Center's ongoing investigations concerning members of the Peak Elite Volleyball Club. The CI(s) information collectively asserted, and alleged that Michael

Fleischacker approached and intimidated certain Peak Elite Volleyball Club parents in the parking lot after a practice held on December 23, 2025. Further, the CI(s) information collectively asserted, and alleged that the subject matter of those December 23, 2025, parent interactions undertaken by Michael Fleischacker included the allegations concerning Isabella Fleischacker.

7. On December 24, 2025, KRVA and United States Volleyball ("USAV") jointly paused activities for the Peak Elite 17U team until Monday, January 5, 2026, due to a report to the Center alleging misconduct that concerned that Peak Elite 17U team. The pause covered all activities, including drills, team activities, and parent meetings. See e.g. 2026 SafeSport Code §V.A.

8. The joint pause of activities for the Peak Elite 17U team by KRVA and USAV was not challenged by the Peak Elite Volleyball Club, Michael Fleischacker or Isabella Fleischacker.

9. On or about January 20, 2026, KRVA directly received information from a CI, who is believed to be cooperating with the Center's ongoing investigations concerning members of the Peak Elite Volleyball Club. The CI information collectively asserted, and alleged certain matters involving Michael Fleischacker and Isabella Fleischacker, which necessitated a mandatory report of that conduct by KRVA. See e.g. 2026 SafeSport Code § X.; Pennsylvania Child Protective Services Law ("CPSL") 23 Pa. C.S.A. §6303, et seq.

10. On January 29, 2026, the Center notified Michael Fleischacker that it had exercised jurisdiction over the allegations against him, and opened the Center's Case Number 2026-00302. It is unknown by KRVA whether, or not, its mandatory report formed the basis for the Center's exercise of jurisdiction. KRVA is also unaware of the details of the Center's investigation concerning Michael Fleischacker.

11. On or about February 1, 2026, KRVA directly received information from a CI, who is believed to be cooperating with the Center's ongoing investigations concerning members

of the Peak Elite Volleyball Club. The CI information asserted, and alleged certain matters involving Michael Fleischacker, including that he was intimidating and threatening minor members of the Peak Elite Volleyball Club. See e.g. 2026 SafeSport Code §IX. D.

12. On or about February 4, 2026, KRVA received information directly from a CI, who is believed to be cooperating with the Center's ongoing investigations concerning members of the Peak Elite Volleyball Club. The CI information collectively asserted that Isabella Fleischacker was engaging in retaliatory conduct against another CI, who is believed to be cooperating with the Center's ongoing investigations concerning members of the Peak Elite Volleyball Club. See e.g. 2026 SafeSport Code §IX. I.

13. As a result of the Center's opening of Case Number 2026-00302 against Michael Fleischacker, the direct receipt of the February 1, 2026, CI information, and at the express direction of USAV, on February 5, 2026, KRVA issued an Individualized Safety Plan to Michael Fleischacker. See e.g. 2026 SafeSport Code §V.A.; §V.E.2.; §XII.C. A true and correct copy of the February 5, 2026, Individualized Safety Plan is attached hereto and incorporated as Exhibit "A."

14. The February 5, 2026, Individualized Safety Plan, on its face, is not a suspension of Michael Fleischacker. See e.g. Exhibit "A."

15. On February 12, 2026, the Zafran Law Group, representing Megan Noon (parent of minor "M.D."), provided a written notice of claims to USAV, KRVA, and Peak Volleyball Club's Director, Elizabeth Driehuis, regarding "significant emotional and psychological trauma" related to her daughter's experience with coaches Michael Fleischacker and Isabella Fleischacker.

16. Michael Fleischacker's attorneys have made written demands for arbitration concerning his February 5, 2026, Individualized Safety Plan to the Center that, in essence, have sought arbitration pursuant to 2026 SafeSport Code at §XII.B.

17. Michael Fleischacker's attorneys have made written demands for arbitration concerning his February 5, 2026, Individualized Safety Plan to the USAV's Ethics and Eligibility Committee that, in essence, have sought arbitration pursuant to the USAV By-Laws at Article XIV E.3.

18. KRVA asserts that the proper jurisdiction for any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan either lies with the Center, or USAV, and not with KRVA.

19. On March 25, 2025, the Center's Dennis O. Evans issued an Email, which in essence, asserted that the Center has not adopted the February 5, 2026, Individualized Safety Plan, and as a result, the proper jurisdiction for any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan lies with KRVA. A true and correct copy of the March 25, 2026, Email is attached hereto and incorporated as Exhibit "B."

20. KRVA disputes the legal conclusion stated in the March 25, 2026, Email from the Center's Dennis O. Evans that the proper jurisdiction for any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan lies with KRVA, as follows:

a. First, the Center has wholly abdicated it statutory duty at 36 U.S.C. §220541 (a)(1)(E) "to protect the privacy and safety of complainants." Here, an arbitration under the KRVA Due Process provisions, as opposed to the 2026 SafeSport Code at §XII.B., sets into motion a process that could result in the "un-masking" of a CI, or CI(s) who are believed to be cooperating with the Center's ongoing investigations concerning members of the Peak Elite Volleyball Club. Further, the Center is undisputably investigating Michael Fleischacker, and only the Center holds knowledge of the identity of the confidential informants and the matters being investigated. The Center therefore is in the sole position to take the appropriate action to protect the CI or CI(s) actually involved;

b. Second, the Center has wholly abdicated it statutory duty at 36 U.S.C. §220541 (a)(1)(H) to "ensure that any action taken by the Center against an individual under the

jurisdiction of the Center, including an **investigation** … is carried out in a manner that provides procedural due process to the individual, including, at a minimum … the ability to challenge, in a hearing or through arbitration, interim measures or sanctions imposed by the Center; and at 36 U.S.C. §220541 (a)(1)(c)(1) where "The Center may, in its discretion, **utilize a neutral arbitration body** and **develop policies and procedures** to resolve allegations … within its jurisdiction to determine the opportunity of any … coach …, who is the subject of such an allegation, **to participate in amateur athletic competition**." Further, the Center is undisputably investigating Michael Fleischacker, and only the Center holds knowledge of the identity of the confidential informants and the matters being investigated. The Center therefore is in the sole position to "utilize a neutral arbitration body" and "develop policies and procedures" so that the appropriate action is taken to provide Michael Fleischacker with his statutory due process rights, as set forth within 36 U.S.C. §220541, during its ongoing investigation. (Emphasis supplied);

c. Third, the 2026 Safesport Code, as issued and implemented by the Center, fails to comply with the Center's statutory mandates as expressly set forth within 36 U.S.C. §220541; and

d. Fourth, the 2026 Safesport Code, as issued and implemented by the Center, is presently causing irreparable harm and damage to KRVA. Specifically, while clothed with statutory powers like an Executive Branch Governmental Agency, the Center undertook the issuance of the 2026 Safesport Code, which fails to recognize the proper relationship between Local Affiliated Organizations ("LAOs"), National Governing Bodies ("NGOs"), and their membership, as well as fails to provide the LAOs with any meaningful due process rights, or remedies, concerning the review of actions taken by the Center, as it pertains to an LAO, that are contrary to 36 U.S.C. §220541. See e.g. Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).

21. The Center, pursuant to 36 U.S.C. §220541, and the 2026 SafeSport Code at §XII.B., is the proper jurisdiction for any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan.

22. As a result of the Center's failure to act pursuant to 36 U.S.C. §220541 and the 2026 SafeSport Code at §XII.B., USAV then holds proper jurisdiction under the USAV By-Laws, at Article XIV E.3., to provide any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan.

23. As a result of the March 25, 2025, Email from the Center's Dennis O. Evans, on March 30, 2026, Michael Fleischacker's attorneys made an Email request to KRVA to rescind the February 5, 2026, Individualized Safety Plan, or in the alternative, issue a written decision pursuant to Section VIII. Violations of Codes/Policies and Due Process at Section 803.

24. On March 30, 2025, KRVA's General Counsel replied by Email to Michael Fleischacker's attorneys that the February 5, 2026, Individualized Safety Plan remained in full force and effect, and would not be rescinded. As a result, this written decision is issued pursuant to the KRVA Due Process procedures as set forth at Section VIII. Violations of Codes/Policies and Due Process, Section 803, as requested by Michael Fleischacker's attorneys.

**B. <u>Code, Policy or Procedure At Issue</u>**

1. 36 U.S.C. §220541, Designation of United States Center for SafeSport, in relevant part, states:

> (a) Duties of Center.-
>
> (1) In general.-The United States Center for SafeSport shall-
>
> (A) serve as the independent national safe sport organization and be recognized worldwide as the independent national safe sport organization for the United States;
>
> (B) exercise jurisdiction over the corporation and each national governing body with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports;
>
> (C) maintain an office for education and outreach that shall develop training, oversight practices, policies, and procedures to

prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies;

(D) maintain an office for response and resolution that **shall establish mechanisms** that allow for the reporting, investigation, and resolution, pursuant to subsection (c), of alleged sexual abuse in violation of the Center's policies and procedures;

(E) **ensure that the mechanisms under subparagraph (D)** provide fair notice and an opportunity to be heard **and protect the privacy and safety of complainants**; …

(H) ensure that **any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation**, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual, including, at a minimum-

> (i) the provision of written notice of the allegations against the individual;
>
> (ii) a right to be represented by counsel or other advisor;
>
> (iii) an opportunity to be heard during the investigation;
>
> (iv) in a case in which a violation is found, a reasoned written decision by the Center; and
>
> **(v) the ability to challenge, in a hearing or through arbitration, interim measures** or sanctions **imposed by the Center.**

(b) Policies and Procedures.-**The policies and procedures developed under subsection (a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title.**

(c) Binding Arbitration.-

(1) In general.-The Center may, in its discretion, **utilize a neutral arbitration body and develop policies and procedures to resolve allegations** of sexual abuse within its jurisdiction **to determine the opportunity of any** amateur athlete, **coach**, trainer,

> manager, administrator, or official, who is the subject of such an allegation, **to participate in amateur athletic competition**. …

(Emphasis supplied).

2. The 2026 SafeSport Code, at §XII.B.1.a., states:

> B. Temporary Measures Hearings
>
> 1. Requesting a Hearing or Reconsideration
>
> a. Temporary Measures Hearing: **At any time after imposition of a Temporary Measure, a Respondent may request a Temporary Measures Hearing by sending a written request to the Center** to Resolutions@safesport.org.[22] After receiving a request for a Temporary Measures Hearing, the Center will send a notice to the Respondent and the arbitration body's administrator informing them that a Temporary Measures Hearing has been initiated.
>
> 22 A Temporary Measures hearing may only be requested as to a Temporary Measure that is presently imposed.

(Emphasis supplied).

3. The USAV By-Laws, at Article XIV.E., Ethics and Eligibility Committee, in relevant part, states:

> E. E&E. In addition to those responsibilities outlined in Section 8.02 B.3 of these Bylaws, E&E **shall** have the following responsibilities:
>
> 1. Decide whether to confirm, extend, reduce or reject a sanction recommended by an Adjudicating Authority for a period beyond the sanctioning authority of the Adjudicating Authority. Such decision shall be based solely on the written record, any additional submissions of the potentially affected parties and the opportunity for due process at the lower level(s).
>
> 2. Determine whether due process was provided to the affected parties with respect to appeals from sanctions imposed by lower Adjudicating Authorities. Note: If the E&E determines prior due process was insufficient, it shall remand the matter with

explanation to the appropriate Adjudicating Authority for reconsideration. Except for (i) a sanction of a RVA pertaining to activities or privileges of that RVA or (ii) a matter in which there is a threat of physical or significant financial harm, as determined by E&E, a finding of insufficient due process shall render a sanction ineffective until it has been properly reconsidered upon remand.

3. **Consider all other appeals of sanctions not covered above** with the exception of appeals by full-time employees of the Corporation or other due process provided in these Bylaws. Unless there is an incident or alleged violation of Corporation policies or procedures for which E&E becomes the initial level of review, any decision of the Committee shall be final and based only on the written record, any additional submissions of the potentially affected parties and the opportunity for due process provided by the prior Adjudicating Authorities.

(Emphasis supplied).

4. The 2026 SafeSport Code, at §V.E., in relevant part, states:

E. The Center will issue a Notice of Exercise of Jurisdiction to the USOPC, NGB, or LAO when the Center determines it has jurisdiction over an allegation of Prohibited Conduct.

1. Upon the Center's issuance of a Notice of Exercise of Jurisdiction, **any temporary measures previously imposed by the USOPC, NGB, or LAO will be automatically and immediately adopted by the Center as its own**, and will be applicable throughout the Movement, and will remain in effect unless and until the Center modifies those measures.

2. **The relevant organization may implement any necessary safety plan(s),** temporary measure(s) (with the exception of a Temporary Suspension), make employment **2** decisions or impose penalties as outlined in Section V.D. NGBs may also make decisions regarding membership, **3** licenses, certifications, eligibility decisions, or other analogous decisions, as long as they do not conduct an investigation and are instead relying on (1) reports and evidence received directly by the NGB,**4** (2) publicly available information, and/or (3) the results of a background check screening report. The NGB shall inform the Center of any safety plan(s), temporary measures(s), employment, membership, license,

> certification, eligibility, or analogous decisions, or penalties as outlined in Section V.D. **that it or its LAO imposes within 72 hours of imposition.** The USOPC, NGBs, and **LAOs** are responsible for resolving **any complaints, appeals, or challenges made to their above-mentioned decisions pursuant to their policies and procedures** and the Ted Stevens Act. The Code in effect at the time of the above-mentioned decision shall be controlling.
>
> 3. When the Center expressly exercises jurisdiction over allegations regarding a particular Participant, **the relevant organization(s) cannot issue—in response to those allegations—a suspension,** except for penalties as referenced in Section V.D.
>
> 2 Employment-related decisions are specific to the employer-employee relationship and board member retention and dismissals. If the USOPC, NGB, or LAO conducts an investigation related to an employment-related decision involving allegations over which the Center has exclusive jurisdiction or has exercised discretionary jurisdiction, the USOPC, NGB, or LAO shall provide all relevant information gathered, to include interviews, to the Center except for information covered by attorney client privilege. See Section X. Failure to provide such information may constitute Interference. See Section II.
>
> 3 **Nothing in this provision authorizes the USOPC, NGB, or LAO to conduct a parallel investigation involving allegations falling within the Center's exclusive jurisdiction as outlined in Section V.B.** or as to a matter involving the Center's discretionary jurisdiction as outlined in Section V.C. Such conduct may constitute Interference. See Section II.
>
> 4 NGBs are expected to keep confidential any information that could lead to publicly identifying the Claimant or third-party reporter.

(Emphasis supplied).

### C. Evidence Considered

1. 36 U.S.C. §220541.

2. 2026 SafeSport Code (Effective Date January 1, 2026).

3. USAV By-Laws (Last Amended May 21, 2025).

4. The matters set forth within Section A.1., at Paragraphs 1-24, infra.

5. The identities of the CI and/or CI(s) referenced within Paragraphs 1-24, infra., are irrelevant, not material, and were not part of the evidence considered to render this decision. Specifically, pursuant to the 2026 SafeSport Code, at §V.E., no parallel investigation involving allegations falling within the Center's exclusive jurisdiction was undertaken by KRVA.

**D. Decision**

1. The KRVA Commissioner determines and decides that the Center, pursuant to 36 U.S.C. §220541, and the 2026 SafeSport Code at §XII.B., is the proper jurisdiction for any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan.

2. The KRVA Commissioner determines and decides that the Center's failure to provide arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan does not comply with 36 U.S.C. §220541; 36 U.S.C. §220541(a)(1)(E), 36 U.S.C. §220541 (a)(1)(H); and 36 U.S.C. §220541 (a)(1)(c)(1).

3. The KRVA Commissioner determines and decides that as a result of the Center's failure to act pursuant to 36 U.S.C. §220541 and the 2026 SafeSport Code at §XII.B., USAV then holds proper jurisdiction to provide any arbitration arising from Michael Fleischacker's February 5, 2026, Individualized Safety Plan, as set forth in the USAV By-Laws at Article XIV E.3.

4. Subject to the matters determined at Paragraphs D.1, D.2., and D.3, infra., the KRVA Commissioner determines and decides that Michael Fleischacker's February 5, 2026, Individualized Safety Plan remains in full force and effect.

**E. Action Taken**

1. Michael Fleischacker's February 5, 2026, Individualized Safety Plan shall remain in full force and effect.

**F. Procedure for Appeal**

1. The procedure for Appeal is set forth in Exhibit "C" attached hereto. An appeal of this matter must be undertaken within ten (10) days following the receipt of these findings and conclusions as to the Michael Fleischacker matter as set forth within the KRVA Due Process procedures Section VIII. Violations of Codes/Policies and Due Process, at Section 806.

**Date of Decision: April 3, 2026**

KEYSTONE REGIONAL
VOLLEYBALL ASSOCIATION

**BY:** ______________________
**John H. Kiefel,**
**General Counsel**

APPROVED BY:

KEYSTONE REGIONAL
VOLLEYBALL ASSOCIATION

**BY:** Michelle Carlton
**Michelle Carlton,**
**Commissioner**

**EXHIBIT "A"**

# <u>INDIVIDUALIZED SAFETY PLAN</u>

**Mike Fleischacker**

## A. <u>Authority and Purpose</u>

This Safety Plan is issued pursuant to the authority of **USA Volleyball ("USAV")**, the **Keystone Regional Volleyball Association ("KRVA")**, and the **U.S. Center for SafeSport ("U.S. Center")**, consistent with the SafeSport Code and the Minor Athlete Abuse Prevention Policies ("MAAPP"). This plan constitutes a temporary safety measure intended to protect athletes, families, staff, and the integrity of the volleyball program during the duration of the **U.S. Center for SafeSport** jurisdiction, pursuant to the 2026 SAFESPORT CODE FOR THE U.S. OLYMPIC AND PARALYMPIC MOVEMENT, Effective Date January 1, 2026, Section XII. C.

## B. <u>Scope of Applicability</u>

This plan applies solely to **Mike Fleischacker** and governs his conduct in all USAV and KRVA volleyball-related activities, including, but not limited to practices, competitions, meetings, and communications.

## C. <u>Safety Requirements</u>

### 1. <u>No Contact Order</u>

**Mike Fleischacker** shall comply with a **No Contact Order** involving the following individuals:

a. Elizbeth Driehuis
b. Isabella Fleischacker
c. Kim Small
d. Minors

No direct or indirect contact is permitted unless explicitly authorized in writing by USAV, KRVA or the U.S. Center.

### 2. <u>Electronic Communication Restriction</u>

**Mike Fleischacker** shall have **no electronic communication with the team, [PEAK ELITE, JUNIOR GIRLS 16-17-18U]**, including but not limited to:

a. Text messages;
b. Emails;
c. Social media; and
d. Team messaging platforms or applications.

**3. <u>Compliance and Consequences</u>**

Failure to comply with any requirement of this Safety Plan will result in **immediate suspension** and may result in additional disciplinary action under USA Volleyball and KRVA policies.

**4. <u>Retaliation</u>**

You are specifically advised that it is a violation of the 2026 SAFESPORT CODE FOR THE U.S. OLYMPIC AND PARALYMPIC MOVEMENT, Effective Date January 1, 2026, for a USAV Participant or someone acting on behalf of a USAV Participant, to Retaliate or attempt to Retaliate. Retaliation is any adverse action or threat to take any adverse action against any person related to allegations of Prohibited Conduct or involvement in any activity related to the reporting or investigative processes of the U.S. Center or other relevant entities under the U.S. Center's jurisdiction.

**5. <u>Duration</u>**

This Safety Plan is effective immediately upon execution and remains in effect until modified or rescinded in writing by USAV, KRVA or the U.S. Center.

**Individual:** Mike Fleischacker

Signature:

______________________________

Date:

______________________________

**Club / Organization Representative:**

Name:

______________________________

Title:

______________________________

Signature:

______________________________

Date:

______________________________

**EXHIBIT "B"**

| | |
|---|---|
| **From:** | Resolutions |
| **To:** | Pat Pierce; jkiefel@johnhkiefellawoffice.mygbiz.com |
| **Cc:** | Scott B Goldshaw; Michael Fleischacker; Rachel Pogolowitz; Andrew.LaFiura@jacksonlewis.com |
| **Subject:** | Re: Demand For Hearing On Temporary Measures |
| **Date:** | Wednesday, March 25, 2026 6:40:32 PM |
| **Attachments:** | image002.png<br>image003.png<br>INDIVIDUALIZED SAFETY PLAN (Mike Fleischacker).pdf |

Good afternoon, Patricia and John,

After review of the timeline related to the matter involving Michael Fleischacker ("Fleischacker"), conversations with internal staff at the U.S. Center for SafeSport (the "Center"), a staff member of USA Volleyball (USAV), and yourselves individually, I wanted to provide the following information to memorialize the timeline, our conversations, and provide potential next steps.

**Timeline**

On January 29, 2026, at 12:21pm MT, the Center exercised jurisdiction over the allegations involving Fleischacker in case 2026-00302.

On February 5, 2026, at 6:04pm MT, the Keystone Region Volleyball Association (KRVA) Events Manager, Valerie Podczasy, issued the *Individualized Safety Plan* (hereafter "safety plan", attached) via email directly to Fleischacker from Results@krva.org.

On February 6, 2026, at 2:36pm MT, on behalf of Fleischacker, the Center received a request from Andrew La Fiura for a hearing related to the *Individualized Safety Plan*.

At 2:58pm MT on that same day, the Center replied stating "...the Center has neither instructed KRVA to impose a safety plan, nor has the Center imposed any temporary measures... Consequently, the Center is not the appropriate venue to request a hearing."

Since February 6, 2026, the request for a temporary measures hearing has been renewed with KRVA, USAV, and the Center to no avail.

**Relevant Provisions**

Pursuant to Section V.E.2. of the *SafeSport Code for the U.S. Olympic and Paralympic Movement* (2026) ("SafeSport Code"), once the Center exercises jurisdiction, "The relevant organization may implement any necessary safety plan(s), temporary measure(s) (with the exception of a Temporary Suspension), make employment decisions or impose penalties..."

Here, since the safety plan was issued *after* the Center exercised jurisdiction, the temporary measures were *not* "automatically and immediately adopted," as outlined in SafeSport Code § V.E.1. (2026).

Accordingly, under the latter portion of SafeSport Code § V.E.2. (2026), "The USOPC, NGBs, and LAOs are responsible for resolving any complaints, appeals, or challenges made to their above-mentioned decisions pursuant to their policies and procedures and the Ted Stevens Act." The appeal process does not run afoul, so long as the relevant organization refrains from conducting its own investigation and instead relies on: (1) reports and evidence received directly by the relevant organization; (2) publicly available information; and/or (3) the results of a background check screening report.

**Potential Next Steps**

Since KRVA is the issuing body of the safety plan, it is incumbent upon KRVA to resolve the appeal consistent with their established policies and procedures. This email is addressed to counsel for both Fleischacker and KRVA to facilitate that process.

Consistent with Center practice and SafeSport Code § XII.A. (2026), the Center retains the authority to impose temporary measures at any time and evaluates the necessity of such measures on an ongoing basis in light of the information then available.

In the event the Center imposes temporary measures, it will do so in accordance with the procedural due process requirements set forth in SafeSport Code § XI.J. (2026). Specifically, the Center will issue a written notice of allegations to the Respondent and provide a summary to USA Volleyball for dissemination to individuals with a *need to know* to properly enforce and effectuation any imposed measures.

Please contact me at resolutions@safesport.org should you have additional questions.

Thank you,

U.S. CENTER FOR SAFESPORT
CHAMPION RESPECT. END ABUSE.

**Dennis O. Evans**
Assistant Director, Response & Resolution Administration

**Confidentiality Notice:** This email and any attachments contain information that is confidential, privileged, or otherwise protected under federal law, including 36 U.S.C. § 220541. It is intended solely for the use of the authorized recipient. Any unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately and delete all copies of this communication.

---

**From:** Pat Pierce <ppierce@ggplawfirm.com>
**Date:** Tuesday, March 24, 2026 at 11:12
**To:** Resolutions <resolutions@safesport.org>
**Cc:** Scott B Goldshaw <sgoldshaw@ggplawfirm.com>, Michael Fleischacker <mfleischacker@gmail.com>, Rachel Pogolowitz <rpogolowitz@ggplawfirm.com>
**Subject:** Demand For Hearing On Temporary Measures

**NOTE:** This email originated from outside of the Center. Do not respond, click links or open attachments unless you recognize the sender and know the content is safe.

Michael Fleischacker hereby demands arbitration of the Temporary Measures set forth attached Individualized Safety Plan pursuant to the 2026 SafeSport Code for the U.S. Olympic and Paralympic Movement, (SafeSport Code), Section XII.B. In connection therewith, Respondent Michael Fleischacker demands that he and his counsel be provided with written notice of the allegations against him which gave rise to imposition of the temporary measures as required by SafeSport Code XI.J.1 and 36 USC § 220541(a)(1)(H).

**Patricia V. Pierce** (she/her)
Partner

Phone (215) 978-9090 | Fax: (215) 445-3629
Email: ppierce@ggplawfirm.com
www.ggplawfirm.com

Goldshaw Greenblatt Pierce

Two Penn Center | Suite 1230
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102

35 Kings Highway East | Suite 200
Haddonfield, NJ 08033

This e-mail may contain attorney-client privileged communications or attorney work product. If you are not the intended recipient, please delete this e-mail immediately and notify the sender you have received this e-mail in error.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**EXHIBIT "C"**

KRVA KEYSTONE REGION VOLLEYBALL ASSOCIATION

# General Operating Codes

Updated: August 2018
Editorial Changes: August 2023

1013 Brookside Road | Suite 203
Wescosville PA 18106

Phone | 610-401-3362
FAX| (888) 391-5782

# Article VIII. Violations of Codes/Policies and Due Process

## Section 8.01 INTRODUCTION

It is the responsibility of the Keystone Regional Volleyball Association ("KRVA") Board with the support and aid of the Regional Office to administer volleyball within the Keystone Region. The following policies and procedures shall apply to matters involving any and all disputes concerning alleged violations of codes or policies created by the KRVA's Board of Directors applicable to Region members as defined in the Region's Operating Codes and By Laws and by USA Volleyball ("USAV"). Such codes and policies include without limitation: codes and policies established by the KRVA Board, a Region Division Chair, or the Region Office. Codes and policies are contained in the Region Documents or otherwise published (paper, web site or email sent by the regional office) and available to Region members; the USAV Code of Conduct; USAV Coaches' Code of Conduct; and USAV or Region tournament text, forms or manuals. It is express intention of KRVA to enforce all applicable Codes and policies as to any KRVA Member, even if they are registered with, or employed by an additional athletic association, athletic organization, public school, or private school, and regardless of the geographic location of the KRVA Member.

For the purposes of this process, the following definitions will apply.

**Mediation**: An attempt to bring about an amicable settlement or compromise between the parties through the objective intervention of a neutral party.

**Arbitration**: The process by which the parties to a dispute submit their differences to the judgment of an impartial person selected under the applicable rules of the arbitration service utilized.

## Section 8.02 COMPLAINT PROCEDURE

1. When a dispute arises, or a KRVA member has violated, or is being accused of violating a code or policy, such disputes and/or violations may require action by KRVA. Upon receipt by the KRVA Commissioner of notice of possible disputes or violations, the KRVA Commissioner, or the KRVA Commissioner in consultation with the Administrative Board, or the KRVA Commissioner in consultation with the entire Board of Directors, with all manner of consultation being in the KRVA Commissioner's sole and absolute discretion, shall promptly investigate and may take appropriate action, if any, as suggested by the facts, precedent, or published Codes, policies and procedures. Any adverse action undertaken shall be communicated as soon as possible to the affected individual, team, or club in a Decision Letter as described in Paragraph C., below. Should no adverse action be undertaken, the form and manner of the follow up communication, if any, shall be determined by the KRVA Commissioner in the KRVA Commissioner's sole and absolute discretion.

2. The Region's purpose is to promote the development and growth of volleyball. The 1 KRVA Board of Directors, with the support and aid of the KRVA Business Office, will serve its members and foster the growth of all aspects of volleyball. KRVA's policies and procedures are in place to protect and preserve the rights, privileges, and integrity of KRVA Members, and sanctioned activities, objectively and fairly. It is the duty of the KRVA to obtain just and fair results when a KRVA member or team is

accused of wrong-doing within the Region. As a private body, the KRVA does not follow the Federal Rules of Evidence, but shall accord weight to evidence based on its substance and on common sense.

3. KRVA's procedures for complaints, fines, sanctions, and due process shall not apply to conflicts between clubs or teams and parents or players concerning club, team, or player fees, playing time, or other matters not directly involving KRVA, USAV, or their respective codes and policies unless the safety of a KRVA Member is implicated.

4. Timeliness: For the best interests of all parties, reasonable timeliness shall be a priority at all levels of consideration.

5. If the safety of a KRVA member is implicated, or physical or other substantial injury has resulted, or the accused was clearly caught in the act of a serious wrongdoing relevant to volleyball, an immediate penalty, sanction, or fine may be imposed against the accused. Also, in that event, the KRVA Commissioner, after conferring with the Administrative Board, may impose a temporary sanction after careful consideration of the evidence and situation developed and known at that time. Any such action shall be stated in writing delivered to the accused.

6. If an individual moves into the Region, or a team attempts to register in the Region, Is subject to the sanctions of another Region, which offers due process and has a procedure for appealing from sanctions, KRVA shall respect and observe the other Region's sanction for the balance of its term (regardless of whether the individual or team exercised such appeal process).

## Section 8.03 DECISION LETTERS

The Commissioner, or Region's legal counsel, shall prepare a writing to the accused party summarizing the allegation precipitating the matter, the relevant policies and code sections, the evidence considered, the decision reached, and, if a sanction is imposed, the process for appeal. Decisions shall be made as soon as possible after a matter is opened and a notification letter to an accused party shall be prepared and transmitted by United States Postal Service, Certified Letter and email promptly thereafter.

## Section 8.04 PENALTIES/FINES

The KRVA Commissioner, or the KRVA Commissioner in consultation with the Administrative Board, or the KRVA Commissioner in consultation with the entire Board of Directors, with all manner of consultation in the KRVA Commissioner's sole and absolute discretion, shall have the right to determine and assess Disciplinary Options for all disputes, violations of KRVA or USAV rules, codes of conduct, ethics and eligibility, posted KRVA policies and rules in KRVA manuals including, but not limited to the potential illustrative list of sanctions:

1. Admonition: Formal or Informal Warning;
2. Probation: Subject to such terms and conditions as may be proscribed;
3. Penalties/Fines:
   a. Up to $100.00 per person, per event,
   b. Up to $150.00 per team; and/or
   c. Up to $300.00 per club.

All fines must be paid to the Region through the Regional Office. The Region will pay the fine into one of the Region's grant giving funds. Unless otherwise directed, any player, team or club having unpaid fines, will have their membership suspended until such fine(s) are paid in full, or maintained on an installment payment plan as approved by the Commissioner. Team or Club unpaid fines are the responsibility of the club director and their administrators. Those memberships are subject to suspension for unpaid fines.

4. Predefined sanctions (Minimum, but not limited to, depending on severity, or number of offenses):

   a. Missing work assignment:
      i. First occurrence: $75 per team/per work assignment.
      ii. Second occurrence same season: $150 per team/per work assignment and a 2-month suspension of head coach.

   b. Coach not IMPACT certified on bench: Probation of club director and a two (2) month suspension of coach unless within "grace period" as defined in KRVA operating codes.

   c. Electronic voting violation as defined in the electronic voting document.

   d. Conflict of Interest violation: Three (3) month suspension.

   e. Code of Ethics violation: maximum suspension as defined by the operating codes, plus maximum fine as defined by the KRVA operating codes.

   f. Missing tournament without notifying TD at least three (3) days in advance: forfeiture of fee, plus $100 fine.

5. Suspension: Individuals, clubs or teams may be suspended from:

   a. EVENTS: any or all specific KRVA run or sanctioned event(s) for a period of up to one (1) year.

   b. MEMBERSHIP PRIVILEGES. Suspension of ALL KRVA (USAV) Membership privileges for a period of up to three (3) years.

   c. SUBSEQUENT OFFENSES. For second and subsequent offenses, suspensions of up to one (1) additional year for each offense may be added, to be served consecutively any prior unexpired suspensions.

   d. NATIONAL REPORTING. Any suspension of membership privileges will be reported to the National Office of USA Volleyball, and to all USA Volleyball Regions for enforcement purposes. Under USAV rules, suspension in a member's home region renders the individuals, teams or club's ineligible for membership in a Regional Volleyball Association, or for any USAV registration.

   e. LIFETIME INELIGIBILITY. Major misconduct, or multiple offenses may subject the violator to lifetime ineligibility of KRVA membership and USAV Membership Registration.

## Section 8.05 CONTINUITY OF SANCTIONS

Once due process has been completed and sanctions have been duly assessed by the presiding KRVA Board or individual member, no subsequent Board or Board member shall be empowered to rescind, pardon, or otherwise set aside the sanctions imposed.

## Section 8.06 APPEALS

1. Decisions of the KRVA Commissioner, Administrative Board or KRVA Board of Directors, may be appealed by the aggrieved party. All appeals must be submitted in writing sent by certified letter from United States Postal Service to the Region Office and by email to the Regional Commissioner. Notification of the appeal must be received by the Office within ten (10) days after receipt of the Decision Letter by the accused party. The appealing party must also submit a One Thousand ($1,000.00) Dollars deposit to begin the appeal process.

2. The appeal shall be heard by the American Arbitration Association, or any successor from time-to-time designated by the Region. Upon receipt of the appeal and a One Thousand ($1,000.00) Dollars deposit, the Region will proceed by forwarding the appeal to the American Arbitration Association, or any successor from time-to-time designated by the Region. The deposit will be held by the Region until the appellant directs transmission of the funds to the American Arbitration Association, and designates whether the deposit shall be used to satisfy the appellant's equal share of mediation costs, or equal share of arbitration costs. The appellant is notified that the One Thousand ($1,000.00) Dollars deposit does not constitute a payment in full for the services provided the American Arbitration Association, or any successor from time-to-time designated by the Region. Appellant's equal share of the mediation costs, or equal share of arbitration costs, may exceed the One Thousand ($1,000.00) Dollars deposit posted.

3. Upon the filing of any appeal, the Region and the parties to the appeal shall first endeavor, in good faith, to resolve the issue(s) amicably by way of a telephonic conference call, or face-to-face meeting. If the appeal is not resolved by the relevant parties to the appeal after the telephonic conference call or face-to-face meeting, then the appeal shall first be referred to mediation pursuant to the clauses set forth in Paragraphs below.

4. The Region and the parties to the appeal shall cooperate with the American Arbitration Association, or any successor from time-to-time designated by the Region, and with one another in selecting a mediator from the service's panel of neutrals and in scheduling the mediation proceedings. The Region and the parties to the appeal agree that they shall participate in the mediation in good faith and that they shall share equally in the mediation's costs. The appellant may direct that the One Thousand ($1,000.00) Dollars deposit held by the Region be applied towards the appellant's equal share of the mediation's total costs, or appellant may separately pay from other funds for the appellant's equal share of the mediation's total costs.

5. All offers, promises, conduct and statements, whether oral or written, made during the good faith resolution provisions of Paragraph 3, above, or in any mediation session by any of the parties to the appeal, the Region, as well as by their respective agents, employees, experts and attorneys, and by the mediator, or any of the mediator's employees, are confidential, privileged and inadmissible for

any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

6. Any party may proceed to arbitration with respect to the matters submitted in the appeal at any time following the initial mediation session, or at any time following 45 days from the date of filing the appeal with the American Arbitration Association, or any successor from time-to-time designated by the Region, whichever occurs first ("Earliest Initiation Date"). The mediation may continue after the timely commencement of arbitration under this Paragraph F.6., if the parties so desire. The Region and the parties to the appeal agree that they that they shall share equally in the arbitration's costs. The appellant may direct that the One Thousand ($1,000.00) Dollars deposit held by the Region be applied towards the appellant's equal share of the arbitration's total costs, or appellant separately pay from other funds for the appellant's equal share of the arbitration's total costs.

7. At no time prior to the Earliest Initiation Date shall any party proceed to arbitration or litigation, except to seek emergency injunctive relief in a court of competent jurisdiction to pursue a provisional remedy to redress immediate irreparable harm, or by agreement of all the parties allowing arbitration or litigation to commence on a date prior to the expiration of the Earliest Initiation Date. However, this limitation is inapplicable to a party if the other party refuses to comply with the requirements of Paragraph F.4. above.

8. The appeal shall be decided by arbitration conducted by a single arbitrator. The arbitrator shall issue his or her decision by way of a written award. The arbitrator may award the arbitration's costs to the substantially prevailing party and assess the arbitration's costs within the written award. The parties shall each bear their own attorney's fees within the arbitration, and the arbitrator shall not issue an award of attorney's fees within the written award. The judgment on the award rendered by the arbitrator shall be considered binding on all parties, and may be entered in any court having jurisdiction thereof.

9. The Region and parties to the appeal shall maintain confidentiality during the pendency of the appeal, arbitration proceeding and the award, including the Hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary relating to a court application for an injunctive or provisional remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

10. Any such award shall be communicated as soon as possible to the Region and the parties to the appeal. Such award shall particularly describe the decision to uphold or dismiss any previously applied sanctions.

11. The arbitration and the rights of the Region and parties to the appeal hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, exclusive of conflict or choice of law rules.

12. The Region and the parties to the appeal agree that any arbitration conducted pursuant to the terms of this Section VIII. Violations of Codes/Policies and Due Process shall be governed by the Federal

Arbitration Act (9 U.S.C. §1-16), as amended.

13. Nothing set forth herein shall be used, or construed, to bar the Region or a party to the appeal from seeking emergency injunctive relief in a court of competent jurisdiction to pursue a provisional remedy to redress immediate irreparable harm.

## Section 8.07 FINAL APPEAL

The United States Volleyball Association provides that the only appeal from a decision of the Region Board shall be to the United States Volleyball Association National Ethics and Eligibility Committee and only for a determination of whether the accused received due process.

## Section 8.08 USAV SAFESPORT PROGRAM MATTERS

1. The following policies and procedures shall apply to all matters that involve United States Volleyball SafeSport Program.

2. Definitions
   a. "Covered Individual" shall mean, for the purposes of this Section H: (1) all those persons registered within KRVA as Participant Members, players, coaches, referees, officials, and expressly includes all volunteers; (2) all persons serving as a member of KRVA's Board of Directors, any KRVA committee or section, or in any other similar positions appointed by KRVA; (3) all coaches, referees, officials or staff (including trainers, physicians, equipment managers) for any KRVA registered team, camp, or program; (4) all USA Volleyball national level staff; and (5) any person that is elected, or appointed by USA Volleyball, or by KRVA, to a position of authority over players, or that has frequent contact with players. A Covered Individual remains as such, even if registered with, or employed by an additional athletic association, athletic organization, public school, or private school, and regardless of the geographic location of the Covered Individual.

   b. "USCSS" shall mean and refer to the U.S. Center for SafeSport (or any successor otherwise named entity recognized by the United States Olympic Committee)

3. All USAV SafeSport Program matters are expressly excluded from the KRVA Due Process procedures set forth within the KRVA By-Laws, at Section VIII. Paragraphs A. through G. The following shall be the sole and exclusive procedures applicable to all USAV SafeSport Program matters:

   a. **<u>Reporting</u>** In the event that any Covered Individual under the jurisdiction of the U.S. Center for SafeSport ("USCSS") is alleged to have 7 8 violated the USA Volleyball SafeSport Policy prohibiting sexual abuse or misconduct (see current edition of USA Volleyball SafeSport Program Handbook and USCSS Policies & Procedures), or in the event that KRVA receives a report, which it is required by the USOC to be referred to the USCSS, then KRVA shall immediately report and refer such matter to USCSS, and notify USA Volleyball of the referral. The duty to report to USCSS and USCSS's jurisdiction to investigate shall not supersede any local, state, or federal reporting requirements or jurisdiction, and shall not affect or impair the ability of any person that reports to the USCSS from also reporting to the appropriate local, state or federal authorities. In addition, nothing set forth herein shall be construed to supersede any provisions of Pennsylvania's Child Protective Services Law, at 23 Pa. C.S.A. §6301, et seq., as amended.

b. **Investigation/Discipline/Adjudication** The USCSS shall have jurisdiction and authority to investigate allegations or reports of sexual abuse or misconduct and of any allegations of violations of USA Volleyball's SafeSport Policies that are reasonably related to and accompany a report of allegations of sexual abuse or misconduct, to issue any interim suspension or measures pending conclusion of the investigation, to make recommendations of sanctions or disciplinary action as a result of such investigation, and to adjudicate such matter according to the USCSS procedures for adjudication. KRVA shall not engage in its own investigation or disciplinary process related to any allegations or reports that are within the jurisdiction of USCSS. However, KRVA may issue a Summary Suspension, which shall be effective until such time as USCSS has exercised jurisdiction over the matter and made a determination related to a person's eligibility pending the investigation and adjudication process.

c. **Appeals** There shall be no appeals of any decisions adjudicated by USCSS except through arbitration with the applicable arbitration body in conformance with the Supplementary Rules for U.S. Olympic SafeSport Hearings or other applicable USCSS or USOC governing documents in effect at such time.

d. **Enforcement of USCSS Sanctions** Upon the issuance by USCSS of any interim or permanent suspension, disciplinary action, sanction or other measures, after conclusion of the adjudicative process or by agreement with a Covered Individual subject to suspension or other sanction, KRVA shall enforce such suspension, measures or other sanctions throughout all its programs. In addition, KRVA shall enforce any suspension or other sanction issued by the USCSS even if arising from allegations outside of USA Volleyball programs, or outside the KRVA territory.

e. **Related SafeSport Violations** The delegation of authority and jurisdiction to USCSS as set forth above, shall also include the investigation and issuance of sanctions related to allegations of other violations of USA Volleyball SafeSport Program Handbook Policies (physical abuse, emotional abuse, bullying, harassment and hazing) that are reasonably related to and which accompany an allegation that involves sexual abuse or misconduct. Additionally, in USA Volleyball's sole and absolute discretion, the USA Volleyball national office may request that USCSS accept jurisdiction of matters that do not involve sexual abuse or misconduct, but do involve allegations of physical abuse, emotional abuse, bullying, harassment or hazing against any Covered Individual. KRVA shall provide all relevant information to the USA Volleyball national office about any such allegation of physical abuse, emotional abuse, bullying, harassment or hazing against a Covered Individual.

# Due Process Decision (Final 4 3 26)-1

Final Audit Report 2026-04-03

| | |
|---|---|
| Created: | 2026-04-03 |
| By: | John Kiefel (jkiefel@verizon.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAInvZIZnOCH4jkKCpo3ceffP5YXAM-_sO |

## "Due Process Decision (Final 4 3 26)-1" History

Document created by John Kiefel (jkiefel@verizon.net)
2026-04-03 - 2:30:15 PM GMT- IP address: 98.114.67.50

Document emailed to Michelle Carlton (commissioner@krva.org) for signature
2026-04-03 - 2:30:23 PM GMT

Email viewed by Michelle Carlton (commissioner@krva.org)
2026-04-03 - 2:35:44 PM GMT- IP address: 65.78.114.30

Document e-signed by Michelle Carlton (commissioner@krva.org)
Signature Date: 2026-04-03 - 2:36:23 PM GMT - Time Source: server- IP address: 65.78.114.30

Agreement completed.
2026-04-03 - 2:36:23 PM GMT

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

120 Broadway
Floor 21 – Intake
New York, NY 10271
Telephone: (856)435-6401

July 8, 2026

Patricia Pierce, Esq.
Goldshaw Greenblatt Pierce, LLC
Two Penn Center Plaza, 1500 JFK Plaza
1500 JFK Plaza
Suite 1230
Philadelphia, PA 19102
Via Email to: ppierce@ggplawfirm.com

John Kiefel, Esq.
Law Office Of John H. Kiefel
520 East Lancaster Avenue
Dowingtown, PA 19335
Via Email to: jkiefel@verizon.net

Case Number: 01-26-0003-1701

Michael Fleischacker
-vs-
Keystone Regional Volleyball Association

Dear Parties:

The Respondent has failed to submit the previously requested filing fee; accordingly, we have administratively closed our file in this matter. Any filing fees received from the Claimant will be refunded under separate cover.

Because the employer has failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol, we may decline to administer any future employment matter involving Respondent. We ask that Respondent remove our name from its arbitration agreements so there is no confusion to the public.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents may be destroyed 18 months after the date of this letter.

Please email employmentfiling@adr.org if you have any questions and we will be happy to assist you.

Sincerely,

Employment Filing Team
Employmentfiling@adr.org
(856) 679-4610

cc:
Rachel Pogolowitz
Scott Goldshaw, Esq.